**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

Darren Williams,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,
    Defendant.

Case No. 20-cv-3337

## Opinion and Order

Before the Court is plaintiff's Motion for Summary Judgment (Doc. 13) and the defendant's Motion for Summary Affirmance (Doc. 17). The motions are fully briefed, and for the reasons stated herein, plaintiff's Motion for Summary Judgment is DENIED and the defendant's Motion for Summary Affirmance is GRANTED.[1]

### I.    Background

Plaintiff, a high school graduate who was 46 years old at the time of his alleged onset date, states that he has a combination of medical problems including degenerative disc disease of the lumbar spine, post laminectomy and two additional spine surgeries, osteoarthritis of the

---

[1] References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 8 (Doc. 8).

shoulders, and anxiety.  Doc. 13, at 1. Plaintiff last worked as a metal fabricator and has not worked since December 5, 2014. *Id.* at 2. Plaintiff stated that he stopped working due to physical limitations and discomfort caused by his back condition.  R. 295.

On July 31, 2018, plaintiff filed a Title II application for a period of disability and disability insurance benefits. R. 16. On August 1, 2018, plaintiff filed a Title XVI application for supplemental security income. *Id.* In both applications, plaintiff alleged disability beginning on June 20, 2017. *Id.*

The claims were denied initially and upon reconsideration.  On April 21, 2020, plaintiff, represented by counsel, appeared for a hearing in front of an Administrative Law Judge (ALJ) during which the ALJ heard testimony from plaintiff and an impartial vocational expert. R. 37-70.

On June 17, 2020, the ALJ issued a partially favorable decision. R. 12-36.  The ALJ found that plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, status-post lumbar laminectomy in 2015 with two additional lumbar surgeries in 2018, osteoarthritis of the shoulders and anxiety ((20 CFR 404.1520(c) and 416.920(c)). R. 19. However, the ALJ determined plaintiff was not disabled at any time from his alleged onset date through June 11, 2020, because he had the residual functional capacity to perform sedentary work with

2

additional postural and environmental limitations. R. 28. Nevertheless, the ALJ determined plaintiff became disabled under the Medical-Vocational Rules as of the date of the ALJ's decision on June 12, 2020, by virtue of nearing 50 years old and being limited to sedentary work. R. 29. In 2020, the Appeals Council denied review, making the ALJ's decision the final decision. R. 1–6; *see generally Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

## II.    Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined in the Social Security Act ("the Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

To determine if a claimant is disabled, the Commissioner conducts a five-step inquiry. 20 C.F.R. § 404.1520. At Step One, the ALJ determines whether plaintiff is engaged in substantial gainful activity. *Id.* at (a)(4)(i). At Step Two, the ALJ determines whether plaintiff's impairments are severe. *Id.* at (a)(4)(ii). An impairment is "severe" if it significantly limits plaintiff's ability to perform basic work activities. *See* 20 C.F.R. 404.1520(c). At Step Three, the ALJ determines whether any of plaintiff's

impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404 of the C.F.R. 20 C.F.R. § 404.1520(a)(4)(iii). At Step Four, the ALJ evaluates plaintiff's residual functional capacity ("RFC") and determines whether the claimant can perform past relevant work based on the RFC. *Id.* at (a)(4)(iv). The RFC represents the most that plaintiff can do given his limitations. 20 C.F.R. § 404.1545(a). An RFC includes limitations for all medically determinable impairments, including nonsevere impairments. 20 C.F.R. § 404.1545(a)(2). To determine an RFC, the ALJ must consider plaintiff's symptoms; their intensity, persistence, and limiting effects; and the consistency of these symptoms with the objective medical evidence and other evidence in the record. *Id.* at (a)(1). Finally, at Step Five, the ALJ determines whether plaintiff can perform other work. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may require the testimony of the vocational expert ("VE") to make a Step Five determination. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Here, the ALJ found at Step One that plaintiff has not engaged in substantial gainful activity since June 20, 2017. At Step Two, the ALJ determined plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, status post-lumbar laminectomy in 2015 with

4

two additional lumbar surgeries is 2018, osteoarthritis of the shoulders and anxiety. At Step Three, the ALJ concluded plaintiff's impairments did not meet or equal the severity of a list impairment.

At Step Four, the ALJ concluded plaintiff retained the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except:

> ". . . he should never be required to climb a ladder, rope or scaffold. He can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He can occasionally balance, as that term is defined in the Dictionary of Occupational Titles (DOT). He can frequently reach overhead bilaterally. He cannot tolerate more than occasional exposure to temperature extremes and vibration. He must avoid hazards, such as unprotected heights and dangerous machinery. In addition, he is limited to simple, routine, repetitive tasks in an environment with few changes in the work setting and requiring no more than frequent interaction with supervisors, co-workers and the public." R. 21.

Finally, at Step Five, the ALJ determined that although plaintiff was unable to perform his past relevant work as a metal fabricator, he still was able to perform work as a table worker, machine tender, and hand assembler. R. 29. However, the ALJ also determined that on the date of her decision, plaintiff became disabled by direct application of Medical-Vocational Rule 201.14. *Id.*

## III.   Standard of Review

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standard and the decision is supported with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir.

2011).   Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).   "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*   On appeal, this Ccourt, while reviewing the entire record, does not substitute its judgement for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v Apfel*, 152 F3d 636, 638 (7th Cir. 1998).   Although significant deference is afforded to the ALJ's determination, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).   "The ALJ must 'build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence.'" *Id.* (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

## V.   Analysis

Plaintiff argues this case should be remanded for two reasons.   First, plaintiff argues the ALJ did not properly apply the regulation's criterion when evaluating the opinion evidence of one of his treating physicians. Doc. 13, at 6.   Second, plaintiff argues the Residual Functional Capacity (RFC) determination was not supported by the substantial evidence,

including plaintiff's subjective symptoms. Doc. 13, at 8. The defendant claims the ALJ committed no error in considering the Record Medical Opinions and she supported her RFC finding with substantial evidence. Doc. 18, at 4, 10.

### a. Evaluation of Medical Opinions

Plaintiff argues this case requires reversal because the ALJ erred by not properly applying 20 C.F.R. § 404.1520c when evaluating the opinion evidence of Dr. Paul Hibbert, plaintiff's treating physician. By that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinion, including those from a claimant's treating physician's opinion. 20 C.F.R. § 404.1520c(a). However, the ALJ must articulate "how persuasive" the ALJ finds "all of the medical opinions and all of the prior medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The applicable regulations direct the ALJ to evaluate an opinion's persuasiveness using several factors, the most important of which are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ need only "minimally articulate [her] reasons for crediting or rejecting" each opinion. *Clifford v. Apfel*, 227 F.3d 836, 870 (7th Cir. 2000).

In this case, the ALJ provided an extensive narrative of medical evidence in the record. R. 19-23. Next, the ALJ explained each medical

opinion, whether it was persuasive, and the reasoning for her conclusion regarding persuasiveness.  R. 26-27.  The Court declines to find error in the ALJ's reasoning.

Dr. Hibbert submitted a medical source statement regarding plaintiff's physical impairments in April 2020. R. 1026-1029. Dr. Hibbert opined that plaintiff can carry less than ten pounds, cannot sit for even two hours total a day, cannot sit for longer than ten minutes at a time before changing positions, and will need to lie down twice a day.  *Id.* Additionally, Dr. Hibbert stated plaintiff was unable to bend, twist, or crouch without pain; plaintiff was capable of occasional to frequent reaching, fingering and feeling; and plaintiff would be off task for more than 25% of the workday. He further stated the limitations had been present since *June 2017. Id* (emphasis added). The ALJ found Dr. Hibbert's opinions unpersuasive and unsupported.  R. 27.

In his briefing here, plaintiff argued the ALJ failed to explain why Dr. Hibbert's report should not be given controlling weight and suggests the ALJ impermissibly made independent medical findings and drew improper inferences from medical reports by doing so. Doc 13 at 8.  However, as stated above, the ALJ need not to defer to any physician's opinion, even a treating physician.  *See supra* at 7–8. Moreover, the Social Security Administration's newly amended regulations governing medical source

8

opinions no longer use the term "treating source."  The new regulation applies to all applications filed after March 27, 2017, including plaintiff's application.

While the ALJ noted multiple times that the record showed plaintiff had limitations due to his medical conditions, contrary to plaintiff's claim, she pointed to several records which contradicted Dr. Hibbert's medical source statement, its extreme limitations, and especially its assertion that the limitations were present since June 2017.  Specifically, the ALJ noted Dr. Vittal Chapa's October 2018 physical examination notes conflict directly with Dr. Hibbert's statement.  Dr. Chapa stated while plaintiff had diminished sensation and reflexes, he had no muscle atrophy or weakness. R. 24, 27, 820. According to Dr. Chapa, plaintiff was able to bear weight and ambulate without assistance. R. 24, 820.  Plaintiff's lumbar flexion was limited, but his straight leg test was negative to 90 degrees, and he had full range of motion. R. 24, 821.  Additionally, while Dr. Hibbert stated there were some limitations regarding plaintiff's manual dexterity, Dr. Chapa found no limitations and plaintiff exhibited full grip strength. R. 27, 820, 1027.

The ALJ pointed to many other physicians' treatment notes that also contradicted Dr. Hibbert's opinion. In November 2018, at a follow-up appointment after an ER visit, the doctor noted plaintiff's "spine appears

normal," "range of motion is not limited," and he had no muscle or joint tenderness. R. 24, 830.   In January 2019, at a follow-up after his last surgery, plaintiff was cleared to return to work with light duty. R. 25, 968. In October 2019, plaintiff was noted to be "moving easily," had a "normal gait," was "able to twist and bend at the waist and sit upright," could move quickly "without any apparent pain," and jumped "out of bed without difficulty." R. 25, 1033-1034. Further, the doctor noted the physical exam indicated no signs "that he is in any pain whatsoever." R. 25, 1034. In November 2019, plaintiff had an appointment with another of his treating physicians, Dr. Timothy Ott. R. 25, 1012-1014. Dr. Ott noted plaintiff had "no apparent limitations in mobility and normal gait." R. 25, 1013. Additionally, while in early December 2019, Dr. Hibbert noted an antalgic gate; in a mid-December 2019 follow-up, Dr. Ott again noted "no apparent limitations in mobility and normal gait." R. 1001 & 1008.

The ALJ complied with 20 C.F.R. § 404.1520c by explaining why she found Dr. Hibbert's opinion unpersuasive and articulating why she found it unsupported and inconsistent with the medical record.   Plaintiff's objection to the ALJ's handling of Dr. Hibbert's opinion is a request to reweigh the evidence in plaintiff's favor, which is impermissible. The ALJ conducted the required analysis of each opinion and found the record does

not support limitations more restrictive than sedentary work with additional limitations.

### b. Evaluation of Subjective Symptoms

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence, specifically including plaintiff's subjective symptoms. Doc. 13, 8. This argument, too, is unavailing.

A claimant's assertions of pain, taken alone, are not conclusive of a disability. 42 U.S.C. § 423(d)(5)(A). An ALJ must determine an individual's RFC, or "what an individual can do despite his or her limitations." SSR 96-8p. This determination must be based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2004) (quoting *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008)). An ALJ "must articulate in a rational manner the reasons for [her] assessment of a claimant's residual functional capacity, and in reviewing that determination a court must confine itself to the reasons supplied by the ALJ." *Getch v. Astrue*, 539 F.3d 473, 481-482 (7th Cir. 2008).

The ALJ considers a claimant's subjective symptoms and whether they "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *See also* SSR 16-3p. It is not the role of the ALJ to impeach the claimant's character, but

the ALJ should assess the credibility of pain assertions by the claimant. *Cole v. Colvin*, 831 F.3d 411,412 (7th Cir. 2016). The ALJ's assessment must be reasoned and supported by evidence. *Jens v. Barnhart*, 347 F.3d 209, 213-214. It is only when the ALJ's determination lacks any explanation or support that a court should declare it to "patently wrong" and deserving of reversal. *Jens*, 347 F.3d at 213.

Plaintiff argues the ALJ failed to consider any evidence about plaintiff's symptoms other than objective medical evidence in determining the RFC. The Court disagrees with this argument. The ALJ provided a thorough examination of various types of evidence. The ALJ discussed plaintiff's testimony and function report, imaging, and treatment history, including surgeries. R. 21-27. Additionally, as stated above in Section III(a), the ALJ addressed clinical examinations by various doctors that contradicted plaintiff's assertions. Ultimately, the ALJ determined that, while plaintiff's lumbar condition could reasonably be expected to cause some symptoms, his statements concerning the limiting effects of the symptoms in his testimony and function reports were not fully supported.

The ALJ pointed to several places in the record that plaintiff's self-reports of pain and activities to doctors contradict his testimony and the reports he prepared. In November 2018, at a follow-up after an ER visit, plaintiff himself denied any back or joint pain. R. 24, 828. In January

2019, at a follow-up after his last surgery, plaintiff stated he was walking several blocks without much discomfort, and he denied muscle weakness. R. 25, 967.  In October 2019, plaintiff complained only of "mild" back pain radiating to his left hip.  R. 25, 1032.  Additionally, as the ALJ noted, plaintiff's treating physician reported in November 2018 that his complaints of pain seem to be disproportionate with the physician's findings.  R. 25, 848.

The ALJ also took into account plaintiff's documented symptoms, including his subjective testimony about pain, when assigning an RFC for sedentary work with additional postural and environmental conditions. All four medical opinions in the record, other than Dr. Hibbert's, either limited plaintiff to light-duty work activity or assessed his mental function as nonsevere with no restrictions.  However, the ALJ noted medical and subjective evidence, including plaintiff's continued complaints of pain after November 2019, supported limitation to the sedentary exertion level with other restrictions in the RFC.  *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)(noting an RFC more limiting than that of any state agency physician or psychologist illustrates reasoned consideration given to plaintiff's evidence).

Plaintiff also argues the ALJ did not explain how her statement that "his statements concerning the limiting effects of [his] symptoms are not fully supported until the date of this decision (which represents the attainment at of age 50) for the reasons explained later in this decision." Doc. 13, 9, R. 22.  The defendant did not address this in its motion.  While the Court finds the ALJ's wording confusing on its face, it is clear the ALJ was referencing her invocation of Medical-Vocational Rule 201.14, which she found plaintiff "disabled" by virtue of nearing age 50, having only a high school education, and previous skilled work experience that was not transferable to jobs that meet the RFC.   R. 29.   The Court finds no reversible error.

## V. Conclusion

The ALJ did not erroneously reject the opinion of medical experts and did not erroneously reject plaintiff's subjective symptoms.  The ALJ's opinion plaintiff was not disabled was supported by substantial evidence, and the ALJ provided adequate discussion to afford meaningful review and assess the validity of her decision.

It is therefore ordered plaintiff's motion for summary judgment (Doc. 13) is DENIED.  Defendant's motion for summary affirmance (Doc. 17) is ALLOWED.

ENTERED: September 19, 2023


   /s/Karen L. McNaught

KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE